In re MULLER.

(Supreme Court, Appellate Division, First Department.   June 10, 1904.)

**1. EXECUTORS—ACCOUNTS—SETTLEMENT—REHEARING.**

Where, on an accounting by an executor and executrix before a referee, the referee proceeded on the theory that a partnership relation had been established between testator and the executor, but on a hearing before the surrogate on the referee's report the surrogate held the proof insufficient to establish a partnership, and thereupon surcharged the executors' account, an order denying a rehearing on the ground that the executors had other evidence of the existence of a partnership, which they were led to refrain from introducing on the reference because of the referee's ruling that evidence already adduced was sufficient to establish a partnership, was error.

**2. SAME—PARTNERSHIP—EVIDENCE.**

On testator's son becoming of age, testator stated to him in his mother's presence that he would take him into partnership, that his name should appear in the firm, and that he should have a half interest therein. From that date the firm name was changed, and the business was transacted in the name of M. &. Son, testator changing his bank account to the name of the firm. Thereafter both father and son drew checks on the account, and more than a year prior to the father's death the son settled a suit against the firm by a stipulation in the firm name agreeing to employ the plaintiff therein as long as the firm or either of its members should continue in business. Prior to the father's death the son's name was continued on the pay roll, with other employés, at a salary of $12 a week, while the father continued to manage the business; and there was evidence that testator's widow at one time stated that testator told her that the appearance of the son's name in the firm was a joke. *Held*, that such evidence was sufficient to show a partnership between testator and his son.

**o. SAME—REFERENCE—PARTNERSHIP ASSETS—VALUE.**

Where a referee, on an issue as to the value of partnership assets, had evidence before him that certain money in bank standing to the credit of the firm was firm assets, and without such deposit the evidence would hardly have justified his finding as to the value of such assets, it was error for the surrogate, on exceptions to the referee's report, to assume that the referee had not taken such deposit into consideration in determining the value of the assets of the firm.

Appeal from Special Term, New York County.

Judicial settlement of the accounts of Anna and George Muller, executrix and executor of the last will of George Muller, deceased. From a surrogate's decree surcharging their accounts, and from an order denying a motion for a rehearing, they appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Isaac Moss, for appellants.
Terry Smith, for respondent.

LAUGHLIN, J.  The testator died on the 1st day of April, 1894, leaving a widow and six children, all of whom were of full age prior to the commencement of this proceeding.  By his will he gave his wife his household effects and the income, rents, issues, and profits of all of the remainder of his estate during her natural life so long as she remained his widow, and at her death, or upon her remarriage,

he directed that corpus of the estate be divided among his children, share and share alike. During many years prior to 1890 the testator was engaged in the business of manufacturing and selling shoes and slippers. During that year his son George, who is one of the executors, became of age, and the business, which had been previously conducted in the name of the testator, was thereafter conducted in the firm name of George Muller & Son. The widow and George were appointed and qualified as executrix and executor under the will. . It was understood between George and his mother that he had a half interest in the business. He was desirous of continuing the business, and he agreed with his mother upon a purchase of the interest of the estate for $5,000, he to assume and pay the debts, which aggregated about $3,000. The business since that time has been conducted in the firm name, but has been treated as belonging to George. No objection was made by any of the children to the manner in which the estate was managed by the executors until the 8th day of July, 1901, when the contestant, Mary Masset, one of the daughters of the testator, obtained an order requiring the executors to show cause why they should not make a final accounting. The executors, pursuant to an order made in the proceeding, filed their accounts on the 10th day of October, 1901. The contestant. filed objections to the accounts, and the matter was referred to a referee. The executors, in their account, charged themselves with the $5,000 received for the interest of the estate in the firm business. The referee determined that the value of the firm business was $31,000, and he surcharged the accounts with one-half of this amount, less the $5,000 with which they had charged themselves. The surrogate was of opinion that the evidence adduced before the referee did not establish the existence of a partnership between the testator and his son, and accordingly further surcharged the accounts of the executors with the other half of the value of the firm assets as found by the referee. At the time of the death of the testator the sum of $4,863.61 was on deposit with the German Exchange Bank to the credit of the firm. The surrogate was of opinion that the referee had not taken this into consideration in determining the value of the firm assets, and he further surcharged the accounts of the executors with this amount. After the surrogate made his decision, the executors moved for a rehearing upon the ground that they had further evidence of the existence of the copartnership, but were led to refrain from introducing the same upon the reference on account of rulings made by the referee during the progress of the hearing to the effect that the evidence already adduced was sufficient to establish the existence of the partnership. We are of opinion that the learned surrogate erred in overruling the decision of the referee on this question, and that the motion for a rehearing should have been granted. It was, of course, competent for the surrogate to require further evidence on the question of the existence and terms of the partnership. The testimony, however, offered by the executors, tending to establish the partnership, was not controverted. It showed, in substance, that George was in the employ of his father, and that on the day when he attained his majority his father said to him that he would take him into partnership; that his name should

appear in the firm, and that he gave him a half interest therein; that from that time on the business was transacted in the firm name of George Muller & Son, as already stated; that some time thereafter —the exact date not appearing—the account which had stood in the German Exchange Bank in the name of the testator individually was changed to the firm name, but that the testator continued to draw the checks until September, 1893, at which time the signatures of both father and son were left at the bank, and thereafter they both drew checks; that an action was brought against both of them by one of the employés for personal injuries, and was settled by an agreement in writing in the name of the firm, by which the firm agreed to continue the injured employé in their employ so long as the firm or either of its members should continue in the business, which agreement was signed by George in the firm name, but, as this was nearly a year prior to the death of the testator, it is presumed that he was familiar with or became aware of its contents. The only evidence tending to impeach this is that George during this time drew $12 a week; that his name remained on the pay roll with other employés; that the father, until prevented by illness about nine months prior to his death, continued to manage the business in the main, and invested the funds individually, without consultation with George; and testimony to the effect that the widow, who testified that her husband said to her son on his twenty-first birthday, in her presence, that he took him into partnership, and gave him half the business, stated to the husband of the contestant that the testator told her that he intended to have George's name appear in the firm as a joke. It is utterly improbable that the testator changed his individual business ·to a firm business, and so continued it until his death, as a mere joke. It was a serious matter, and as a business man he is presumed to have so understood it. The employés of the firm and those doing business with it appear to have understood that the son had become a partner, and the foreman of the factory at the time of the testator's death, called as a witness by the contestant, testified on his direct examination that George was a partner with his father in the business. It is conceded that they were partners as to third parties, but it is claimed that the evidence is insufficient to show that they were partners inter sese. That the father intended to and did take his son into partnership with him appears quite clear from this evidence, and the inference is fairly deducible from the fact that he gave his son a half interest in the business that they were to share the profits and losses equally. It is to be borne in mind that they did not consult counsel, which accounts for the informality of the agreement. It is claimed that the testimony of George negatives the idea that he was a partner. He was asked what interest he had in the business, and he answered: "As partner, I suppose I had a half interest. I do not know." He was thereupon asked if he did not know whether he had a half interest or not, to which he answered, "I think so." In answer to the question, "Were you receiving a salary?" He said, "No, I was entitled to so much a week out of my share." This and other similar testimony given by George is susceptible of the construction that he was not certain as to his legal rights, but it does not disprove

the gift of one-half the business to him by his father, or the evidence that he was taken into partnership.

We are also of opinion that the learned surrogate erred in assuming that the referee did not take into consideration the amount standing to the credit of the firm in the bank in determining the value of the assets of the firm. It is to be borne in mind that the referee was proceeding upon the theory of the existence of the partnership. The evidence was before him that this money was deposited in the name of the firm, and that, therefore, it presumably constituted firm assets. His opinion indicates that he had this in mind, and it is doubtful if the evidence would have justified a finding that the partnership assets were worth $31,000, unless this bank account were included. The executors charged themselves with bonds and mortgages aggregating $9,100. The referee surcharged their accounts with the face value of certain other mortgages which were outstanding at the time of the death of the testator, but were subsequently satisfied of record by the executors. The surrogate further surcharged the accounts of the executors with the face value of two other mortgages, both executed after the death of the testator—one for $5,000, directly to the executors, and the other to one of the executors individually for $1,000—and subsequently assigned by her to the executors. Counsel for the executors contends, and there appears to be much force in the contention, that the fair inference is that the moneys invested in these mortgages were the proceeds of other mortgages paid off and discharged, and with which the executors have been charged; but the evidence could and should have been more specific on this point. It is claimed that the learned surrogate erred in charging the executors personally with the costs of the accounting. The learned referee in his opinion advances arguments which tend to support his conclusion that the costs should be borne by the estate. We are of opinion that this question should also be reconsidered by the Surrogate's Court.

It follows from these views that the order and decree should be reversed, and a new hearing had in the Surrogate's Court, or before a referee to be appointed thereby, with costs to the appellants payable out of the estate, and that the question of how the costs of the accounting shall be paid should be left to the determination of the Surrogate's Court on the rehearing. All concur.